# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

JULIUS THOMAS                                                                                    PETITIONER
ADC # 101535

v.                                            5:17CV00067-JM-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction                                                         RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**DISPOSITION**

**I. BACKGROUND**

Petitioner, Julius Thomas, was convicted by a jury in the Hempstead County Circuit Court of one count of rape and one count of second-degree sexual assault. (*Id*., at 2.) The judgment and commitment order sentencing him to a total of 60 years in the Arkansas Department of Correction was entered on December 14, 2014. (*Id.*)

Mr. Thomas timely filed an appeal, and the Arkansas Court of Appeals affirmed his convictions. *Thomas v. State*, 2016 Ark. App. 195. The Court summarized the evidence in this case as follows:

> The victim in this case is Z.N., who at the time of the allegations was five years old. She alleged that on March 18, 2014, Thomas, her babysitter's boyfriend, placed a black pole-like object between her legs and in her genital area. During Z.N.'s testimony, she made statements that indicated that penetration had not occurred. However, Z.N. also testified that she was sure that Thomas had hit her "in" her "pocketbook" with the black thing and that it hurt. Z.N.'s testimony was not the only evidence of penetration submitted at trial. The child's mother, Chiquita Trotter, testified without objection to statements made to her by Z.N. regarding the alleged rape. Trotter testified that Z.N. had described to her a bad dream in which a man was on top of her "going up and down." She also stated that Z.N. was acting out in a sexual manner and that, when she asked Z.N. about it, Z.N. had told her that

Thomas had hurt her. Z.N. indicated to Trotter that Thomas had thrown her onto the bed, made her take her clothes off, and had put a "black pole" between her legs and "inside her pocketbook." Trotter further testified that, on the night of the alleged rape, Z.N. had uncharacteristically wet herself and that she refused to sit down in the bathtub, complaining that her pocketbook hurt. When Trotter took Z.N. to the doctor, there was redness in her vaginal area. Deborah Porcia, the nurse practitioner who examined Z.N., testified that she observed redness "inside" Z.N.'s labia majora and indicated that it was consistent with sexual abuse. When given a polygraph test, Thomas's responses that he had not taken off Z.N.'s clothing, had not performed any sexual act with Z.N., and had never stuck anything in Z.N.'s vagina were found to be deceptive.[1]

*Thomas v. State*, 2016 Ark. App. 195, at 3-4.

Significantly, Mr. Thomas sought no further post-conviction relief in state court. Although Mr. Thomas failed to file a Petition pursuant to Arkansas Rule of Criminal Procedure 37, he now seeks federal habeas relief alleging his trial counsel was constitutionally ineffective.

Mr. Thomas's Petition asserts four areas in which his attorney was allegedly ineffective. He says his attorney 1) failed to independently investigate a discovery violation; 2) failed to request an in-chambers hearing with the court to obtain a ruling on his victim's credibility; 3) failed to obtain (or preserve for review) an appellate ruling on the sufficiency of evidence to support his second-degree sexual assault conviction; and 4) failed to argue or obtain a ruling upon the admissibility of Computer Voice Stress Analyzer (polygraph test) results. Petitioner raised very similar arguments with the Arkansas Court of Appeals. However, on appeal, he framed these issues as errors by the trial court. The Arkansas Court of Appeals dismissed three of his arguments because he failed to preserve the issues for appeal. *Thomas v. State*, 2016 Ark. App. 195.

Mr. Thomas also says he is being subjected to cruel and unusual punishment given the

---

[1] As the Court of Appeals noted, "pocketbook" was the victim's name for her genital area. *Thomas v. State*, 2016 Ark. 195, at 3, n. 4.

harsh nature of his sentence. He argues that his sixty-year sentence, 45 years for rape and 15 years for sexual assault, consecutively, constitutes cruel and unusual punishment.

After careful review of Mr. Thomas's Petition, for the following reasons, I find his claims are procedurally defaulted, and that his case does not meet the narrow criteria for an exception to procedural default outlined in *Martinez v. Ryan*, 566 U.S. __, 132 S.Ct. 1309 (2012). Therefore, the Petition should be DISMISSED.

## II. ANALYSIS

### A. Procedural Default

Respondent argues that Mr. Thomas has procedurally defaulted his claims by not first filing a petition for post-conviction relief in the state court. Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) ("We have consistently adhered to this federal policy, 'for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950))); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981). When an inmate fails to comply with the fair-presentment requirement, his or her claims will be procedurally defaulted. *Murphy*, 652 F.3d at 849.

If it would be futile for a petitioner to return to the state courts to present his or her claim,

"the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996))).

After carefully reviewing the record, I conclude that Mr. Thomas has indeed procedurally defaulted all of his claims. He admits that he did not file a petition for post-conviction relief with the Arkansas courts (Doc. No. 2, at 7), and no Rule 37 petition or ruling appears in the record now before me.

Nevertheless, Petitioner argues that the Court should review his claims pursuant to *Martinez v. Ryan*, 566 U.S. __, 132 S.Ct. 1309 (2012). *Martinez* established a "cause-and-prejudice" test for the exception to procedural default, but by its very terms, was confined to narrow circumstances. 132 S.Ct., at 1315. The exceptions are succinct: "Inadequate assistance of counsel **at initial-review collateral proceedings** may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (*Id.*)(emphasis added). The language of the *Martinez* exceptions strongly implies, if not compels, that there must have been a collateral post-conviction proceeding. That did not happen here. The first Supreme Court case to deal with the inevitable ripple effects of *Martinez* clarified and emphasized a key qualification to *Martinez*: "At the same time we qualified our holding. We said that the holding applied where state procedural law said that 'claims of ineffective assistance of trial counsel **must** be raised in an initial-review collateral proceeding' *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1914-1915, (2013)(emphasis in original).

The Eight Circuit has held that *Martinez* applies to Arkansas collateral review proceedings. *Sasser v. Hobbs*, 735 F.3d. 833 (8th Cir. 2013). But *Martinez* and all of its progeny discuss a defective collateral-review process; they do not discuss a non-existent one- a collateral review that did not happen because the convicted person simply failed to file it.

The Petitioner states he did not have counsel for post-conviction proceedings, and that is no doubt true. Arkansas does not provide for the appointment of counsel in post-conviction proceedings as a matter of right. Ark. R. Cr. P. 37.3 (b); *Flemons v. State*, 2016 Ark. 460. But nothing in the record indicates that Mr. Thomas ever requested an attorney be appointed for him. More importantly, nothing indicates he filed or attempted to file a Rule 37 Petition on his own, as he could have done.

Mr. Thomas does not allege, and he offers no facts in support of a supposition that anything the State of Arkansas did or failed to do prevented him from filing a Rule 37 petition. As Respondent points out, at least one district court has grappled with this problem and come to the conclusion that *Martinez* was unavailing to the petitioner who simply fails to seek any relief:

> The rule in *Martinez* is triggered either where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial or where appointed counsel in the initial-review collateral proceeding was ineffective. The Supreme Court was adamant that its holding in *Martinez* created a "limited" and "narrow" exception to the rule established in *Martinez*. 132 S. Ct. at 1315, 1319. Because the Court spoke only of applying its exception to an "initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel[,]" we conclude that the *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever. *Id*. at 1318. Were it otherwise, the Martinez rule could potentially apply to any defendant who failed to petition for state collateral review.

*Jones v. Pa. Bd. of Prob. & Parole*, 492 Fed. Appx. 242, 246-247 (3d Cir. 2012)

I find this reasoning to be persuasive. *Martinez* should not be read to allow a convicted person to simply bypass state procedures and to use the Federal courts as the first stop in post-conviction

review. Accordingly, I find Mr. Thomas's Petition for Writ of Habeas Corpus should be DISMISSED.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, all of Mr. Thomas's claims are clearly procedurally defaulted. His ineffective assistance of counsel claims have never been raised in the state courts and his cruel and unusual punishment argument is raised for the first time in this Court, meaning, of course, that it was not raised in state court either. *Martinez* is unhelpful to Mr. Thomas inasmuch as he simply failed to file a post-conviction petition in state court and he asserts no legally significant reason for his failure to do so. Therefore, no certificate of appealability should be issued.

### IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Mr. Thomas's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED without prejudice.

2. A certificate of appealability should not be issued.

DATED this 10th day of May, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE